IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION – CINCINNATI

| | | |
|---|---|---|
| ALEXANDER KAMINSKI, | : | Case No. 1:19-cv-1010 |
| | : | |
| Plaintiff, | : | Judge Matthew W. McFarland |
| | : | |
| v. | : | |
| | : | |
| THE HILLMAN GROUP, INC., | : | |
| | : | |
| Defendant. | : | |

**ORDER GRANTING MOTION TO DISMISS (Doc. 4)**

This case is before the Court on Defendant's Motion to Dismiss the Complaint (Doc. 4) pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim. Plaintiff has filed a response in opposition (Doc. 5), to which Defendant has filed a reply (Doc. 7), making this matter ripe for the Court's review.

**FACTS**

Plaintiff Alexander Kaminski began working for Defendant Hillman in May 2017 when he was roughly 42 years old. Plaintiff alleges that, shortly after his hire, he noticed numerous electrical issues, which he reasonably believed were violations of the Occupational Safety and Health Administration (OHSA) regulations. Plaintiff reported these issues, both orally and in writing, to his direct manager, Michael Marcum. Several weeks passed without Plaintiff seeing any remedies, so he followed up with Marcum, who, in turn, forwarded Plaintiff's concerns to a Hillman maintenance manager. Plaintiff does not allege that he ever reported his concerns to any outside

authority.

In October 2017, Hillman's HR held an all-employee safety meeting where the head of HR, Kevin Prock, invited employees to identify safety issues that needed to be remedied. Plaintiff raised his hand and eventually did a walk-through of the warehouse with Prock to point out the electrical issues he had previously identified. Prock assured Plaintiff that the issues would be fixed. A day or two later, Plaintiff was called into Operations Manager Roger Stelletell's office, where Plaintiff alleges that Stelletell yelled at and accosted him for reporting the issues to HR. Regardless, the issues were remedied a few days later. And from then through January 2018, Plaintiff admits that his employment was generally positive.

In February 2018, Plaintiff was notified that Hillman was looking for forklift drivers. Hoping to apply, Plaintiff asked a manager about the position. She told him that he could not apply unless he had been working at Hillman for six months (even though he had been working for Hillman for eight months at that time) but directed him to speak with Chuck Huestead. Plaintiff did so and alleges that Huestead said that he "could" waive the six-month requirement but then later refused to do so. Hillman subsequently hired two people to fill the positions, both of whom were younger than age 40. Afterwards, Plaintiff alleges that Ben Wilcox, the director of warehouse operations, insulted him for being rejected. Plaintiff, however, does not allege that Wilcox had any involvement in the hiring process.

In March 2018, a Maintenance II position became available. Plaintiff attempted to apply from his home computer but found that he was locked out of the system. The

next day, he asked Marcum about his inability to apply. Marcum tried to log into the system at work, but also found that Plaintiff was locked out. Marcum told Plaintiff that he would speak with IT. But Plaintiff alleges that IT never responded, and the application deadline came and passed. Regardless, Plaintiff alleges that Marcum submitted Plaintiff's application in person.

Several months passed but Plaintiff was never interviewed. On June 11, 2018, Marcum informed Plaintiff that he had been rejected for the promotion since he did not have the required three-years' experience (although the initial job posting did not mention any such requirement). Two months later, Plaintiff learned that the position had been filled by Caleb, an individual outside of Plaintiff's protected age class. Caleb was later fired but the position was again filed by an individual outside of Plaintiff's protected class. But Plaintiff does not allege that he ever applied for the position when it reopened.

Meanwhile, Plaintiff alleges that he experienced IT issues that began to bleed into his scope of employment. He describes the issues as "his scanner (which came with the new scanning system) [would] often read 'wrong box.'" (Doc. 3 at ¶ 80.) According to Plaintiff, his attempts to resolve the issues resulted in "negative time" on his employee productivity and gave off the impression that he might have been "either stealing time or not meeting [his] quota." (*Id.* at ¶¶ 81-82.) As a result, Plaintiff was disciplined for "trying to cheat productivity by tricking it into negative time." (*Id.* at ¶ 83.) Plaintiff also alleges that these same IT issues left him unable to apply for other internal job openings, despite repeated attempts.

3

"[T]ired of the continued retaliation and being passed over for promotions," Plaintiff resigned on May 8, 2019. (*Id.* at ¶ 93.) According to Plaintiff, Hillman forced him to resign "because of his age, in retaliation for his complaints of disparate treatment, in retaliation for his complaints of unsafe working conditions, and/or in retaliation for whistleblowing complaints." (*Id.* at ¶ 96.)

On October 1, 2019, Plaintiff filed a Charge with both the Equal Employment Opportunity Commission (the "EEOC") and the Ohio Civil Rights Commission (the "OCRC"). On October 23, 2019, Plaintiff commenced this action against Hillman in the Hamilton County, Ohio Court of Common Pleas, but only asserted state law claims. A few days later, the EEOC issued a Notice of Right to Sue letter and, two weeks after that, Plaintiff amended his complaint to include federal age discrimination claims. Hillman then removed the action to this Court and now seeks to dismiss the complaint for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6).

## LAW

### I. Motion to Dismiss

When considering a Fed. R. Civ. P. 12(b)(6) motion to dismiss, the Court accepts all allegations of material fact as true and construes them in the light most favorable to the non-moving party. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 554-55 (2007). The Court need not accept as true, however, "a legal conclusion couched as a factual allegation." *Id.* at 555 (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)).

To survive a motion to dismiss, a complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft*

4

*v. Iqbal*, 556 U.S. 662, 678 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556). A complaint that merely "offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do. Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement." *Iqbal*, 556 U.S. at 678 (cleaned up).

## II. Motion to Amend

Under Rule 15, the Court "should freely give leave [to amend] when justice so requires." Fed. R. Civ. P. 15(a)(2); *see also Foman v. Davis*, 371 U.S. 178, 182 (1962) ("... this mandate is to be heeded."). However, leave to amend a complaint "may be denied where there is undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party for virtue of allowance of the amendment, futility of amendment, etc." *Beydoun v. Sessions*, 871 F.3d 459, 469 (6th Cir. 2017) (cleaned up).

## ANALYSIS

Hillman contends that Plaintiff's Complaint should be dismissed pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim because Plaintiff "simply does not put forward any claim that is plausible on its face or otherwise timely filed." (Doc. 4.) In response, Plaintiff contends that (1) he has pled sufficient facts that establish plausible claims; and (2), in the alternative, if the Court finds that he has not, he is entitled to

amend his complaint "once as a matter of course" pursuant to Fed. R. Civ. P. 15(a)(1)(B). Both arguments are discussed in turn below.

### I. Motion to Dismiss

Hillman proffers numerous arguments in favor of dismissal, all of which have merit. To dispose of this matter, however, the Court need only discuss one. All of Plaintiff's claims are premised, at least in part, on the fact that he was constructively discharged. But according to Hillman, Plaintiff fails to sufficiently plead a claim of constructive discharge (Count 2). And without it, the rest of Plaintiff's claims (Counts 1, 3-6) are time-barred. As discussed below, Hillman is correct in both regards.

#### A. Plaintiff Fails to State a Plausible Claim of Constructive Discharge (Count 2)

To establish a claim of constructive discharge, Plaintiff must show that (1) he was discriminated against by Hillman to the point where a reasonable person in his position would have felt compelled to resign, and (2) he actually resigned. *See Green v. Brennan*, 136 S. Ct. 1769, 1777 (2016). The Sixth Circuit has adopted a multi-factor test to assist in determining whether working conditions were objectively intolerable:

> Whether a reasonable person would feel compelled to resign depends on the facts of each case, but we consider the following factors relevant, singly or in combination: (1) demotion; (2) reduction in salary; (3) reduction in job responsibilities; (4) reassignment to menial or degrading work; (5) reassignment to work under a younger supervisor; (6) badgering, harassment, or humiliation by the employer calculated to encourage the employee's resignation; or (7) offers of early retirement or continued employment on terms less favorable than the employee's former status.

*Ross v. Pfizer, Inc.*, 375 Fed. Appx. 450, 457 (6th Cir. 2010).

Plaintiff does not allege that any of these events occurred, which alone could

warrant dismissal of his Complaint. *See, e.g., Littlejohn v. Montgomery Cty. Treasurer*, No. 3:16-CV-00350, 2017 WL 2861183, at *3 (S.D. Ohio July 5, 2017) (granting Rule 12(b)(6) motion to dismiss constructive discharge claim when "Plaintiff describes circumstances to meet only one out of seven factors").

Instead, Plaintiff merely alleges that "[d]uring his employment with Hillman, [he] was subjected to offensive and harassing conduct based on his whistleblowing from his superiors and coworkers." (Doc. 3 at ¶ 120.) Yet the only factual allegations that Plaintiff pleads in support are that: (1) Stelletell "accosted" and "yelled" at him for reporting the electrical issues to Hillman in October 2017; and (2) "[o]n or about May 8, 2019, [Plaintiff], tired of the continued retaliation and being passed over for promotions, resigned from his employment." (*Id.* at ¶¶ 36-38 & 93.)[1] This is insufficient to establish a plausible claim of constructive discharge. "One or two comments . . . do not result in a work environment that is so intolerable that it would force any reasonable employee to resign." *See Carlisle v. Staffing Sols. Se., Inc.*, No. 1:16-CV-00334, 2017 WL 2274995, at *3 (E.D. Tenn. May 24, 2017). The fact that Plaintiff subjectively felt that he could not continue his employment under these conditions is irrelevant since it is well-settled that a "plaintiff's conclusory allegations and subjective beliefs . . . are wholly insufficient evidence to establish a claim of discrimination." *Mitchell v. Toledo Hosp.*, 964 F.2d 577, 584 (6th Cir. 1992); *see also Peters v. Lincoln Elec. Co.*, 285 F.3d 456, 479 (6th Cir. 2002) ("hurt feelings are not enough to create a case of constructive discharge").

---

[1] The rest of Plaintiff's "factual allegations" are merely "labels and conclusions or a formulaic recitation of the elements of [his] cause of action," which the Supreme Court has expressly held "will not do." *Iqbal*, 556 U.S. at 678 (cleaned up).

Furthermore, Plaintiff has a timing issue. The Sixth Circuit has held that "isolated and ambiguous comments" made eight months before a layoff are too "abstract . . . irrelevant, and prejudicial" to support a finding of discrimination, *Phelps v. Yale Sec., Inc.*, 986 F.2d 1020, 1025 (6th Cir. 1993), and that a seven month "delay rebuts any inference that [plaintiff] felt compelled to resign because of the alleged harassment he felt by his supervisors and defeats his claim of constructive discharge." *Coffey v. Chattanooga-Hamilton Cty. Hosp. Auth.*, 194 F.3d 1311 (6th Cir. 1999).

Likewise, here, the only fact Plaintiff pleads in support of his constructive discharge claim is that Stelletell yelled at him in October 2017. But Plaintiff did not resign until May 2019. This 19-month delay diminishes any causal-relationship between the alleged "discrimination" and Plaintiff's resignation and is too far too attenuated for the Court to reasonably infer that he was constructively discharged. In fact, every date contained in Plaintiff's Complaint is too attenuated: Plaintiff found out that he would not be considered for the Maintenance II position on June 12, 2018—almost eleven months before he resigned—and he learned that "Caleb" was hired for the position in August 2018—more than nine months before he resigned.

In sum, Plaintiff fails to plead enough factual matter to support a plausible claim of constructive discharge. And the little support he does plead is far too attenuated to for the Court to reasonably infer that he was constructively discharged.

### B. Plaintiff's Remaining Claims (Counts 1 & 3-6) Are Time-Barred

Since Plaintiff has failed to allege a claim for constructive discharge, his voluntary resignation is not an adverse action. As such, the limitations period for

8

Plaintiff's remaining claims (Counts 1, 3-6) do not begin to run until either June 12, 2018—when Hillman told Plaintiff that he would not be considered for the Maintenance II position—or August 2018—when Plaintiff learned that Hillman hired "Caleb."

Under Ohio law, Plaintiff's whistleblower claim (Count 1) must have been brought "within one hundred eighty days after the date the disciplinary or retaliatory action was taken." O.R.C. § 4113.52(D). Since Plaintiff learned that he was denied the second promotion on June 12, 2018, the statute of limitations for this claim expired on December 9, 2018. As for his state law age discrimination claims (Counts 3, 5, & 6), Ohio law similarly provides that they must be brought "within one hundred eighty days after the alleged unlawful discriminatory practice occurred." O.R.C. § 4112.02(L). These claims thus accrued in August 2018—at the latest—and expired on February 27, 2019—at the latest. As for his federal age discrimination claims (Counts 4, 5, & 6), a party has, at most, "300 days after the alleged unlawful practice occurred" to file a charge of discrimination with the EEOC and applicable state agency. 29 U.S.C. § 626(d). As such, Plaintiff had until June 27, 2019, at the very latest, to file his charge. Yet Plaintiff did not file his charge until October 1, 2019 and did not file this lawsuit until October 23, 2019. Accordingly, Plaintiff's remaining claims (Counts 1 & 3-6) are time-barred. *See, e.g., Cyrs v. Sec'y, Dep't of Veterans Affairs*, No. 08-12929, 2009 WL 2168314, at *5 (E.D. Mich. July 16, 2009); *see also Green v. Brennan*, 136 S. Ct. 1769, 1789 (2016) (Alito, J., concurring) (describing how when a constructive discharge claim fails on the merits, any "lesser included" claims could thus be time barred).

9

## II. Motion to Amend

Plaintiff also contends that, if the Court finds that he has not adequately pled facts to support his claims, he should be afforded the opportunity to amend his complaint. According to Plaintiff, he is entitled to such an amendment pursuant to Fed. R. Civ. P. 15(a)(1), which states that a "party may amend its pleading *once* as a matter of course . . . ." *Id*. (emphasis added). Yet Plaintiff already exercised this privilege when he amended his state court complaint on November 12, 2019. The fact that the case was subsequently removed to federal court does not alter this. *See, e.g., Cincinnati Bengals, Inc. v. Abdullah*, 2010 WL 1857270, at *9 (S.D. Ohio Apr. 28, 2010) (concluding that plaintiff could not amend complaint again as a matter of course when plaintiff previously amended it while it was in state court); *Wright v. Chase Home Finance, LLC*, 2011 WL 2173906, at *3 (D. Ariz. June 2, 2011); (same); *Gartin v. Spyderco, Inc*, 1997 WL 1037883, at *5 (D. Colo. Aug. 13, 1997) (same); *Ransby v. Countrywide Home Loans Servicing, Inc.*, 2011 WL 13216947, at *6 (N.D. Ga. July 13, 2011) (same). Instead, Plaintiff is required to seek leave from the court to amend his complaint, which he fails to properly do here.

The Sixth Circuit has held that "a bare request in an opposition to a motion to dismiss — without any indication of the particular grounds on which amendment is sought — does not constitute a motion within the contemplation of Rule 15(a)." *Beydoun v. Sessions*, 871 F.3d 459, 469 (6th Cir. 2017) (*citing PR Diamonds, Inc. v. Chandler*, 364 F.3d 671, 699 (6th Cir. 2004)). Indeed, "Plaintiffs are not entitled to a directive from the district court 'informing them of the deficiencies of the complaint and then an

10

opportunity to cure those deficiencies.'" *Graham v. Fearon*, 721 F. App'x 429, 439 (6th Cir. 2018) (quoting *Begala v. PNC Bank, Ohio, N.A.*, 214 F.3d 776, 784 (6th Cir. 2000)); *see also Louisiana Sch. Employees' Ret. Sys. v. Ernst & Young, LLP*, 622 F.3d 471, 486 (6th Cir. 2010) (affirming district court's denial of leave to amend when plaintiffs merely included a request to do so in their brief opposing defendants' motion to dismiss); *M.S. by Covington v. Hamilton Cty. Dep't of Educ.*, 756 F. App'x 510, 518 (6th Cir. 2018) (same); *United States ex rel. Harper v. Muskingum Watershed Conservancy Dist.*, 739 F. App'x 330, 335 (6th Cir. 2018) (same).

Although Plaintiff has provided the Court with a copy of his proposed Second Amended Complaint, he gives no basis for why leave to amend should be granted. He simply states, repeatedly, that if the Court grants Hillman's Motion to Dismiss, he should be given leave to amend in order to "remedy" his complaint. The Court will not construe these perfunctory requests as a proper motion for leave to amend. *See Beydoun*, 871 F.3d at 470 ("in these situations, we have found that there was no 'motion' to deny") (cleaned up, citations omitted). This determination is further supported by the fact that Plaintiff already had an opportunity to amend his complaint, and Hillman has proffered evidence of "bad faith" and "dilatory motive" on the part of Plaintiff.

## CONCLUSION

For the reasons above, Hillman's Motion to Dismiss (Doc. 4) is **GRANTED**. Plaintiff's Complaint is hereby **DISMISSED** and this case is closed on the docket of this Court.

**IT IS SO ORDERED.**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO

By: _____
JUDGE MATTHEW W. McFARLAND
